Herbert C. FOWLER,
Plaintiff–Appellant,

v.

Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant–Appellee.

No. 86–2677.

United States Court of Appeals,
Tenth Circuit.

June 6, 1989.

Paul F. McTighe, Jr., Tulsa, Okl., for plaintiff-appellant.

Deana Ertl–Brackett, Asst. Regional Counsel, Dept. of Health and Human Services, Denver, Colo. (Richard K. Willard, Asst. Atty. Gen., Layn R. Phillips, U.S. Atty., Peter Bernhardt, Asst. U.S. Atty., Tulsa, Okl., Donald A. Gonya, Chief Counsel for Social Security, Randolph W. Gaines, Deputy Chief Counsel for Social Security Litigation, A. George Lowe, Chief, Disability Litigation Branch, Russell Shultis, Attys. for the Office of General Counsel, Dept. of Health and Human Services, Baltimore, Md., on the brief), for defendant-appellee.

Before MOORE, BARRETT and ALARCON,* Circuit Judges.

PER CURIAM.

Plaintiff appeals from an order of the district court affirming the Secretary's determination that plaintiff received an overpayment of Social Security Disability Insurance benefits and, because he was not without fault in causing the overpayment, the overpayment could not be waived.

In 1972, plaintiff applied for and was awarded disability benefits based on a finding that he was totally disabled and unable to engage in substantial gainful activity due to chronic glomerulonephritis. In 1980, following a hearing before an Administrative Law Judge (ALJ), the earlier finding of disability was reversed.

■ There was no dispute that plaintiff had a medically disabling condition.[1] However, the ALJ found that at no time had plaintiff been unable to work for a period of at least twelve months but instead he had engaged in substantial gainful activity during the time he was receiving disability benefits. See 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1520(b). Plaintiff appealed to the district court which remanded to develop the record further on the issues of whether fraud or similar fault was involved

---

* The Honorable Arthur L. Alarcon, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. Plaintiff died April 6, 1987. The Secretary has continued to pursue this action in accordance with 20 C.F.R. § 404.515(b)(2). At oral argument the court raised the issue sua sponte whether this appeal is moot. The court's concern dealt with whether, due to plaintiff's death, there were any funds available in the estate or elsewhere to satisfy any judgment entered for the Secretary. The Secretary has submitted a supplemental brief on this issue. Under 42 U.S.C. § 404(a)(1)(A)(Supp.1989), *formerly at* 42 U.S.C. § 404(a)(1), the Secretary shall recover any overpayments by a refund from an overpaid person's estate or shall decrease any payments due "to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person." Plaintiff's widow may be entitled to widow's insurance benefits when she reaches the age of sixty. Further, overpayments were made to plaintiff's widow and children during the time that plaintiff received payments. Overpayments made to plaintiff's widow and children can be recovered. This appeal is not moot.

in plaintiff's initial application for benefits [2] and, if not, when plaintiff had returned to work, and whether the Secretary should waive the overpayment. 20 C.F.R. § 404.506.

Following a hearing on these issues, the ALJ determined that fraud was involved in plaintiff's application for benefits. Therefore, the reopening was proper and the overpayment could not be waived. The Appeals Council adopted the ALJ's recommended decision, thus becoming the final decision of the Secretary. Plaintiff appealed and the district court subsequently affirmed.

On appeal to this court, plaintiff argues that the Secretary's determination was not based on substantial evidence. Plaintiff argues that his testimony showed that he stopped working in April, 1972, and did not return to work at any time either prior to the time he formed his corporation in 1974 or thereafter. Plaintiff argues that he did not perform any work or duties for or receive income from the corporation. He argues that he claimed personal automobile and travel expenses as business expenses because of "an honest mistake" and that none of the checks he received represented payment for work done for the corporation.

■ We review a final decision of the Secretary only to determine whether the decision is supported by substantial evidence. *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir.1986). We may not weigh the evidence nor substitute our discretion for that of the agency. *Id.* Substantial evidence " 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126, 140 (1938)).

■ If plaintiff actually engaged in substantial gainful activity, he could not be found disabled, regardless of the severity of his impairments. 20 C.F.R. § 404.1520(b).

Substantial gainful activity is defined as work activity that is both substantial and gainful.... Substantial work activity is work activity that involves doing significant physical or mental activities.... [W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. § 404.1572(a),(b).

■ Additional considerations apply in evaluating whether a self-employed person is engaged in substantial gainful activity.

(a) We will consider your activities and their value to your business.... We will not consider your income alone.... We consider that you have engaged in substantial gainful activity if—

(1) Your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood;

(2) Your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing; or

(3) You render services that are significant to the operation of the business and receive a substantial income from the business.

20 C.F.R. § 404.1575.[3]

■ Fraud or similar fault will be found if the facts show that the initial determina-

---

**2.** Pursuant to 20 C.F.R. § 404.988(c)(1) a determination may be reopened at any time only if it was obtained by fraud or similar fault or one of the other factors listed in this section.

**3.** Substantial gainful activity will be found if a claimant's earnings averaged more than $200.00 a month before 1976, $230.00 a month in 1976, $240.00 a month in 1977, $260.00 in 1978,

tion of disability or the overpayment was based upon

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or should have been expected to know was incorrect.

20 C.F.R. § 404.507. The ALJ must also "consider all pertinent circumstances, including [claimant's] age, intelligence, education, and physical and mental condition." *Id.*

Plaintiff had had a general agent's contract with Minnesota Mutual Life Insurance Company (Minnesota Mutual) since 1965. He had also had a general agent's contract with Old Line Life Insurance (Old Line Life) since 1970. In his initial application for benefits, dated June 22, 1972, plaintiff stated that he was self-employed and had been unable to work since March 1, 1972. He had been placed on disabled status by Old Line Life in January, 1972. However, plaintiff did not reveal that on May 31, 1972, he had entered into a new agent's contract with Minnesota Mutual. As an agent, his duties continued to include the sale of policies and receipt of commissions on those sales and on renewals. However, taxes on commissions were withheld by the company. Plaintiff testified that his general agent's contract was cancelled because he could no longer perform all of the duties of a general agent which included the recruiting and hiring of other agents.

Minnesota Mutual's records show that plaintiff earned commissions amounting to $11,599.00 in 1972. Plaintiff testified that this amount represented renewals on previously sold policies, not new sales and, therefore, was attributed to work performed prior to 1972. Plaintiff did not submit any documentation to support his testimony.

Minnesota Mutual's records also show that plaintiff earned commissions amounting to $14,794.00 in 1973 and $12,228.00 in 1974. Plaintiff testified that these amounts represented only renewals and new policies written by other agents "who were doing work for me." Plaintiff testified that these agents would turn their work in in his name because he was the general agent for the company. Plaintiff submitted no records to support this testimony.

Plaintiff incorporated his business in 1974. He testified that he performed no work for the corporation. However, at the initial hearing before the ALJ, plaintiff was questioned regarding an earlier statement that his services to the corporation were worth $300.00 or $400.00 a month. Plaintiff responded: "Well, that was services that had I not had somebody to do the work, or the corporation would have been worth $300.00 or $400.00 a month, but I didn't have somebody to do the work."

The ALJ found that "[a]t all times in question claimant was the primary and only continuing personality in his insurance business. He made decisions, hired employees, trained employees, formed a corporation and used corporate funds for personal expenses." Further, the ALJ found that plaintiff rendered significant services to the corporation because "it must be assummed [sic] that such work provided such guidance and direction as was necessary and was responsible for the generation of any profits accrued by the corporation."

Additionally, the president of Old Line Life submitted a statement that he considered plaintiff "fully employed and a productive active agent." Old Line Life terminated plaintiff's disability benefits in January, 1975, because he was generating so much new business.

The ALJ examined plaintiff's corporate tax returns which included automobile and

$280.00 a month in 1979, or $300.00 a month after 1979. 20 C.F.R. § 404.1574(b)(2). A determination that plaintiff engaged in substantial gainful activity may be made solely on the basis

of earnings compared with the standards set forth in this regulation. *Hedge v. Richardson,* 458 F.2d 1065, 1067–68 (10th Cir.1972).

travel expenses as business expenses. The ALJ held that "most of the amounts listed as a corporate expense must be considered as earnings from claimant's business activities" because plaintiff's "testimony indicated that most automobile and travel expenses charged to the corporation were actually his personal expenses."

 We give great deference to the ALJ's determination of plaintiff's credibility. *Campbell v. Bowen,* 822 F.2d 1518, 1522 (10th Cir.1987); *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983). The ALJ found that plaintiff's testimony lacked credibility because his "testimony taken as a whole is totally self-serving and expedient and cannot be relied upon."

Plaintiff had one year of college education and had earned his living in insurance for many years. Based on these facts, the ALJ found that plaintiff "would be expected to know about disability programs and Social Security benefits" and, therefore, he was at fault in furnishing incorrect statements in his initial application and in failing to furnish information he should have known was material after benefits were awarded. The ALJ found that plaintiff's "intent to defraud was clear, and except for the inadvertent remarks he made in December 1978, he would still be receiving disability benefits."

■ Plaintiff did not meet his burden of showing that his disability prevented him from performing any substantial gainful activity. *Broadbent v. Harris,* 698 F.2d at 412, citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). Documentary evidence supports the determination that plaintiff was at fault in the statements he made in his application for benefits and that his earnings in 1972 and 1973 exceeded the standards established in 20 C.F.R. § 404.1574(b)(2). Plaintiff's own testimony establishes that he was engaged in substantial gainful activity after he incorporated his business in 1974 as defined in 20 C.F.R. § 404.1575(a)(2) because the value of his services in managing the corporation exceeded the monetary limits set forth in 20 C.F.R. § 404.1574(b)(2).

We hold that there is substantial evidence to support the Secretary's determination that plaintiff's initial application for benefits involved fraud or similar fault, that plaintiff was engaged in substantial gainful activity during the time he received benefits, and that he was not without fault in continuing to accept the benefits.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED. The Secretary's motion to file a supplemental brief is GRANTED.

The mandate shall issue forthwith.